```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
BARBARA YEHUDAH,                                                 :
                                                                 :
                          Plaintiff,                             :
                                                                 :
          – against –                                            :   MEMORANDUM DECISION AND
                                                                 :   ORDER
OPTOID PRINT3D EYEWEAR, and JAMES                                :
KIM, OD, FAAO                                                    :   24-CV-1672 (AMD) (JAM)
                                                                 :
                                                                 :
                          Defendants.                            :
---------------------------------------------------------------- X
```

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this action against her former employer for race discrimination in violation of 42 U.S.C. § 1981 and constructive discharge and hostile work environment based on race, religious and sexual orientation discrimination in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-502 *et seq.* Before the Court are the *pro se* defendant James Kim's motion to dismiss and motion pursuant to New York's Anti-Strategic Litigation Against Public Participation (anti-SLAPP) law. As explained below, the defendant's motions are denied.

## BACKGROUND[1]

On June 1, 2022, the defendant James Kim hired the plaintiff, who "identifies as a Black, Jewish bisexual Israelite," as a medical assistant for his practice at the defendant Optoid Print 3D

---

[1] The facts are based on the allegations in the complaint, which the Court is required to accept as true on a motion to dismiss. *See Williams v. Richardson*, 425 F. Supp. 3d 190, 200 (S.D.N.Y. 2019) ("In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint.").

Eyewear. (ECF No. 1 ¶¶ 14, 21.) The plaintiff's duties included "scheduling patients, pre-testing patients and ensuring patient satisfaction" and she "performed her duties in an exemplary manner." (*Id.* ¶ 15.) In November 2022, the plaintiff and a colleague approached the defendant to "discuss calculations on their paychecks." (*Id.* ¶ 17.) Instead of "engaging them in a good faith discussion," the defendant "suggested that his calculations were more accurate than" the plaintiff's because of the defendant's race; he said "the math is correct, trust me, *I'm the Asian one.*" (*Id.* (emphasis in original).) Also in November 2022, the defendant sent the plaintiff the following text message, which the plaintiff says includes a "retaliatory sick leave policy:"

> Hey just a quick word about paid sick days. I've been thinking about how I should handle it because calling out for a sick day, *yeah you can use it. But the rate I pay is going to be $15/hr. That way you can still use sick days for personal time off and I can still discourage the usage of sick days for that purpose.* If you give me a doctor's note or some proof you had to take a family member to the hospital or something necessary like that, I will pay your normal rate.

(*Id.* ¶ 18 (emphasis in original).) The plaintiff responded "that this practice was illegal." (*Id.* ¶ 19.)

By January 2023, the defendant had "created a hostile work environment . . . that was rife with illegal and inappropriate comments;" the defendant made "inappropriate and illegal comments anywhere from three to four times a week." (*Id.* ¶¶ 20–21.) "On multiple occasions," the defendant "rant[ed] about the Jewish religion, calling Jews 'pedophiles' and 'Nazis,' and would routinely remark that those who identify as LGBTQ had been raped and in turn became rapists themselves." (*Id.* ¶ 22.) The plaintiff kept her "head down in a state of utter shock and disturbance," but the defendant did not stop. (*Id.* ¶ 23.)

On February 14, 2023, the defendant texted the plaintiff and her colleague a "pornographic Satanic symbol, which included a graphic image of male genitalia." (*Id.* ¶ 24.)

2

The plaintiff did not respond.  (*Id.* ¶ 25.)  On February 17, 2023, the defendant sent additional inappropriate photographs to the plaintiff and her colleague, with the message that plaintiff says referred to Jewish people: "[D]on't forget why your people worshipped cats," and "tonight being Sabbath for the Ashkenazi 'Jewish' Hebrews . . . just felt like spitting some real rabbinical knowledge."  (*Id.* ¶ 26.)  The plaintiff responded that she was taking a sick day the next day because "she was too offended to be in his presence at work."  (*Id.* ¶ 27.)  On March 4, 2023, the defendant texted the plaintiff and her colleague that Jewish people were "always fleeing a god they think doesn't exist with their little brain (dicks) right down to the most satanic orgy ever.  After death."  (*Id.* ¶ 28.)  He also sent a "photoshopped photo of his face on a Pharaoh," and wrote "by the actual Allah(swt) … just some wisdom from your pharoh [sic]."  (*Id.* ¶ 29.)

In May 2023, the plaintiff noticed that the frogs in the office's fish tank were "looking at her."  (*Id.* ¶ 30.)  When she told the defendant in passing that the "frogs always look at her when she walks by," the defendant responded, "they are from Madagascar, which is by Africa, so they probably recognize you."  (*Id.*)  The plaintiff did not respond, "hoping her silence would make it evident that these comments were discriminatory, offensive and inappropriate in the workplace."  (*Id.* ¶ 31.)  However, the defendant "continued to routinely share his bigoted views about [the plaintiff's] Jewish faith, sexual orientation, and race."  (*Id.* ¶ 32.)  There was no human resources department to which the plaintiff could complain.  (*Id.* ¶ 34.)  On August 13, 2023, the plaintiff resigned "to remove herself from the incredibly hostile work environment [the defendant] had created."  (*Id.* ¶ 35.)

The plaintiff brought this action on March 5, 2024, alleging racial discrimination in violation of 42 U.S.C. § 1981, hostile work environment based on sexual orientation, religious discrimination, and racial discrimination in violation of the NYSHRL and NYCHRL, and

3

constructive discharge in violation of the NYSHRL and NYCHRL.  (*Id.* ¶¶ 36–78.)  She seeks a declaration that the defendants' practices are unlawful, an injunction preventing the defendants from engaging in the unlawful practices, an order preventing the defendants from retaliating against her, compensatory and punitive damages, pre-judgment and post-judgment interest and costs.  (*Id.* at 12–13.)  The defendant asks the Court to dismiss the complaint for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim.  (ECF No. 23.)[2] The defendant also filed a motion pursuant to New York's anti-SLAPP law.  (ECF No. 24.)

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*.  "Where a motion to dismiss asserts a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as well as other grounds for dismissal, 'the court should consider the Rule 12(b)(1) challenge first.'" *Burlington Ins. Co. v. MC&O Masonry, Inc.*, No. 17-CV-2892, 2018 WL 3321427, at *1 (E.D.N.Y. July 5, 2018) (quoting *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).  "[I]n resolving a Rule 12(b)(1) motion, 'a district court . . . may refer to evidence outside the pleadings.'" *Molokotos-Liederman v. Molokotos*, No. 23-CV-1654, 2023 WL 5977655, at *5 (S.D.N.Y. Sept. 14, 2023) (quoting *Makarova*, 201 F.3d at 113).

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

---

[2] The corporate defendant answered the complaint in October 2024.  (ECF No. 16.)

4

*v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## DISCUSSION

### I. Subject Matter Jurisdiction

The defendant argues that the Court lacks subject matter jurisdiction because the plaintiff did not receive a "Letter to Sue" from the Equal Employment Opportunity Commission (EEOC). (ECF No. 23 at 3.)[3] The plaintiff responds that the defendant conflates the requirements for Section 1981 lawsuits with the requirements for lawsuits pursuant to Title VII of the Civil Rights Act of 1964. (ECF No. 30 at 8.) A plaintiff seeking relief under Title VII must first file a complaint with the EEOC, and receive a right to sue letter, before she can file a Title VII complaint in federal court. That rule does not apply to a plaintiff seeking relief under Section 1981, as the plaintiff is in this case. *See Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 375 (E.D.N.Y. 2000), *aff'd,* 62 F. App'x 28 (2d Cir. 2003) ("It should be noted that § 1981 has no administrative filing requirements."); *Campbell v. Grayline Air Shuttle, Inc.*, 930 F. Supp. 794, 801 (E.D.N.Y. 1996) ("[A]n employee may [] bring an action against an employer under Section 1981 without exhausting Title VII's administrative procedures."); *Brown v. Castleton*

---

[3] The defendant also argues that the plaintiff does not plead facts showing that the alleged discrimination was a "but-for" cause of the challenged action, as required by Section 1981. (ECF No. 23 at 3–5.) However, this argument relates to the plaintiff's substantive claim and does not impact whether the Court has subject matter jurisdiction.

5

*State Coll.*, 663 F. Supp. 2d 392, 399 (D. Vt. 2009) ("[The plaintiff] was not required to exhaust his administrative remedies before bringing the § 1981 lawsuit.").[4] Accordingly, the motion to dismiss for lack of subject matter jurisdiction is denied.

## II.    Service of Process

The defendant also maintains that the plaintiff did not serve him properly, because an "anonymous and unidentified server," not the plaintiff, served the complaint on a "current female employee," who placed "the papers" on his office desk. (ECF No. 23 at 5–6.) The plaintiff argues that service was proper under the federal rules, and that she also filed an affidavit of service. (ECF No. 30 at 11–12.)[5]

Federal Rule of Civil Procedure 4(e), which governs service of process for federal lawsuits, lists methods of service. As relevant here, Rule 4(e) provides that an individual "may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under New York law, one of the ways "[p]ersonal service upon a natural person shall be made" is:

> (2) by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to

---

[4] As the defendant notes, the plaintiff brings only one federal claim — the Section 1981 claim. However, the Court has supplemental jurisdiction over the plaintiff's state and city claims brought under the NYSHRL and NYCHRL because they relate to the same conduct that forms the basis of the plaintiff's federal claim. *See Baker v. MTA Bus Co.,* No. 18-CV-12231, 2023 WL 4896686, at *5 (S.D.N.Y. Aug. 1, 2023) ("The court exercises supplemental jurisdiction over plaintiff's claims brought under the NYSHRL and NYCHRL pursuant to 28 U.S.C. § 1367(a), as these claims 'form part of the same case or controversy' as plaintiff's federal law claims." (quoting 28 U.S.C. § 1367(a))).

[5] The defendant appears to argue that the plaintiff "omi[tted] the server's affidavit in her Proof of Service," but also says that the plaintiff "knew to include the Court's Affidavit of Service itself." (ECF No. 23 at 5.) Regardless, the plaintiff filed affirmation of service for both the individual and corporate defendants. (*See* ECF Nos. 5, 6.)

> the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service . . .

New York Civil Practice Law and Rules ("CPLR") § 308. "Actual place of business" includes "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." *Id.*

The plaintiff met the service requirements under New York law. As the defendant concedes, the plaintiff's process server delivered the summons and complaint to an employee at the defendant's office, who placed the papers on his desk. (ECF No. 23 at 5–6.) The plaintiff filed an affirmation of service, which identified the person served and the date and time of service. (ECF No. 5.) The affirmation also states that in addition to personal service on a "suitable person," the process server also mailed a copy of summons and complaint to the defendant's office on the same day, which complied with CPLR § 308. (*Id.*) The "process server's affidavit establishes a presumption of proper service," and the defendant has not submitted a counter-affidavit "aver[ing] specific facts to rebut the process server's affidavit." *Templos v. Luna Cuisine, Inc.*, 738 F. Supp. 3d 325, 330 (E.D.N.Y. 2024).

### III. Failure to State a Claim[6]

The defendant argues that the plaintiff does not state a claim under Section 1981, the NYSHRL, or the NYCHRL. According to the defendant, the plaintiff does not allege a *prima*

---

[6] The Court does not consider the defendant's exhibits — customer service reviews (Exhibit 1), another employee's resignation (Exhibit 3), and the plaintiff's paystubs (Exhibit 4) — because they are not

7

*facie* case of employment discrimination because she omits "other factors unrelated to [her] race, religion, or sexual orientation;" he says that "her voluntary departure from employment" would have still occurred because of "her own unprofessionalism and verbal misconduct towards patients." (ECF No. 23 at 7–8.) The defendant also argues that his "intentions behind the statements" were "not directed to the Plaintiff individually and served only to relay their own experiences also not having the same equal rights as 'white citizens.'" (*Id.* at 8.)[7] Finally, the defendant asserts that the plaintiff's allegations about the sick leave policy "did not translate to actual loss of pay." (ECF No. 23 at 8.) The plaintiff responds only that she alleged sufficient facts to meet the "flexible" motion to dismiss standard, (ECF No. 30 at 12–13), and does not address the standards for stating a claim under Section 1981, the NYSHRL, and the NYCHRL.

### a. Race Discrimination Under Section 1981

Employment discrimination claims under Section 1981 are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under that framework, the plaintiff must first establish a prima facie case of discrimination;" the burden then "shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions," and if the defendant satisfies its burden, "the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual." *Noh v. Admarketplace, Inc.*, No. 24-CV-2107, 2025 WL 965882, at *7 (S.D.N.Y. Mar. 28, 2025) (citing *McDonnell Douglas Corp.* 411 U.S. at 802–03). While the plaintiff must ultimately "prove that the defendant acted with discriminatory motivation," at the pleading stage, "the facts alleged

---

"appended to the complaint," "incorporated in the complaint by reference," or "integral to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

[7] The defendant says that the etymology of "black," "Israelite," and "Jewish" shows that it is antisemitic and racist to identify as a Black, Jewish bisexual Israelite, so he could not have discriminated against the plaintiff. (ECF No. 23 at 8–12.)

8

must merely 'give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase' of the case." *Id.* (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)). The question on a motion to dismiss is therefore "whether the plaintiff has adequately pleaded a prima facie case." *Id.*

To plead *a prima facie* case under Section 1981, a plaintiff must allege "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, [she] has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Kiseleva v. Greenspan*, 755 F. Supp. 3d 367, 377 (S.D.N.Y. 2024) (quoting *Littlejohn*, 795 F.3d at 307). "To survive a Rule 12(b)(6) motion to dismiss, 'a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).

The plaintiff has stated a claim for race discrimination under Section 1981. The plaintiff alleges that she is a member of a protected class because she identifies as a Black woman. (ECF No. 1 ¶ 21.) *See Kiseleva*, 755 F. Supp. 3d at 378 ("Although Section 1981 does not reference 'race', the Supreme Court has construed it as forbidding racial discrimination and has defined racial discrimination covered by the statute to include discrimination based on 'ancestry or ethnic characteristics.'"). The defendant does not contest that the plaintiff was qualified for her position, and she alleges that she "performed her duties in an exemplary manner." (ECF No. 1 ¶ 15.)

9

With respect to the third element, the only adverse employment action that the plaintiff alleges is constructive discharge. (*Id.* ¶¶ 1, 35.)  *See Noh*, 2025 WL 965882, at *7 ("Adverse employment actions include discharge from employment.  Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a constructive discharge." (citation omitted)).[8]  "To prove adverse employment action based on constructive discharge, a plaintiff must show that rather than discharging her directly, her employer intentionally created a work atmosphere so intolerable that she was forced to quit involuntarily." *Id.* (cleaned up).  "Work conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014) (cleaned up). "Dissatisfaction with work assignments," "routine disagreements with supervisors," and "mild criticisms" are "insufficient to establish the sort of intolerable working conditions necessary to a constructive discharge claim[].'" *Nazon v. Time Equities, Inc.*, No. 21-CV-8680, 2022 WL 18959570, at *15 (S.D.N.Y. Nov. 22, 2022) (quoting *Pfizenmayer v. Hicksville Pub. Sch.*, No. 15-CV-6987, 2017 WL 5468319, at *9 (E.D.N.Y. Jan. 24, 2017)), *report and recommendation adopted,* No. 21-CV-8680, 2023 WL 1516905 (S.D.N.Y. Feb. 3, 2023).

The plaintiff alleges that the defendant called Jews "pedophiles" and "Nazis" (ECF No. 1 ¶ 22), said that "those who identify as LGBTQ had been raped and in turn became rapists themselves" (*id.*), sent the plaintiff a "pornographic Satanic symbol, which included a graphic image of male genitalia" (*id.* ¶ 24), said that the plaintiff's people — the Jewish people —

---

[8] The plaintiff also alleges that the defendant "invoke[d] a retaliatory sick leave policy," under which she got paid less if she took sick days "for personal time off;" the defendant would only pay the "normal rate" if the plaintiff gave him a doctor's note. (ECF No. 1 ¶ 18.)  However, the plaintiff does not allege that the policy was an adverse employment action.  Moreover, the plaintiff does not say anything else about the "sick leave policy" in her complaint or in opposing the motion to dismiss.

10

"worshipped cats" (*id.* ¶ 26) and were "always fleeing a god they think doesn't exist with their little brain (dicks) right down to the most satanic orgy ever" (*id.* ¶ 28), and that frogs in the office fish tank "are from Madagascar, which is by Africa, so they probably recognize" the plaintiff (*id.* ¶ 30). These allegations are sufficient at the motion to dismiss stage, since they describe work conditions that "are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Pryor*, 992 F. Supp. 2d at 262. The defendant's alleged comments about the plaintiff's race are also sufficient to suggest that the defendant "acted with discriminatory motivation." *Kiseleva*, 755 F. Supp. 3d at 377.

    b. **NYSHRL and NYCHRL Claims**

        *i. Hostile Work Environment*

The plaintiff brings claims for hostile work environment based on racial, religious, and sexual orientation discrimination under both the NYSHRL and NYCHRL. The standard for stating a claim for hostile work environment under the NYSHRL used to be the same as the standard for claims under Title VII of the Civil Rights Act of 1964 — a plaintiff had to show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *13 (E.D.N.Y. Sept. 21, 2015), *aff'd,* 652 F. App'x 44 (2d Cir. 2016) (quoting *Littlejohn*, 795 F.3d at 320). However, in August 2019, "the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 300). Critically, the amendment "eliminate[d] the 'severe or

11

pervasive' requirement in favor of a more lenient standard of liability." *Mayorga v. Greenberg*, No. 22-CV-387, 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023). A plaintiff "need only allege that she was subjected to 'inferior terms, conditions or privileges of employment because of the individual's membership in one or more of the[ ] protected categories.'" *Id.* (quoting N.Y. Exec. L. § 296(1)(h)).

The plaintiff alleges that she "was subjected to inappropriate and illegal comments anywhere from three to four times a week;" the defendant made inappropriate comments about Jewish people on "multiple occasions during the work week", and he "routinely" made comments about LGBTQ people. (ECF No. 1 ¶¶ 21–22.) The plaintiff also alleges that the defendant sent her "graphic" and "sexually inappropriate" text messages, which were "unprovoked." (*Id.* ¶¶ 24, 26.) The plaintiff told the defendant that she was taking a sick day because "she was too offended to be in his presence at work." (*Id.* ¶ 27.) Nevertheless, the defendant continued to send "inappropriate" messages in a work group chat and made a "racially discriminatory" comment to the plaintiff in the office (*id.* ¶¶ 28, 30), conduct that continued for at least eight months (*id.* ¶¶ 20, 33). These allegations are sufficient. *See Mayorga*, 2023 WL 6307994, at *9 (allegations of "multiple instances of the defendant's discriminatory, offensive, and sexually harassing behavior that he regularly targeted at the plaintiff" "easily satisfie[d] the NYSHRL" (cleaned up)); *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017) ("numerous racially-charged statements" and a "pattern of facially neutral comments and practices," "taken together" stated a claim for hostile work environment); *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 210–211 (2d Cir. 2010) (plaintiff "stated a plausible race-based hostile work environment claim sufficient to survive dismissal" where he

alleged numerous racial comments and was threatened with termination after reporting the comments).

"The standard to prevail on a hostile work environment claim under the NYCHRL is lower than the state and federal counterparts;" the plaintiff must show only "unequal treatment based upon membership in a protected class." *Gurley v. David H. Berg & Assocs.*, No. 20-CV-9998, 2022 WL 309442, at *5 (S.D.N.Y. Feb. 2, 2022) (citations omitted). "In other words, a plaintiff must show that she was treated less well because of discriminatory intent." *Id.* (citation omitted); *see also Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) ("[A]ll that is generally required under the NYCHRL is that the plaintiff proffer evidence of unwanted gender-based conduct." (citations omitted)). The plaintiff's allegations about the defendant's comments about her Jewish faith, sexual orientation, and race meet the lower standard under the NYCHRL. *See Quintero v. Angels of the World, Inc.*, No. 19-CV-6126, 2021 WL 4464123, at *9 (E.D.N.Y. Sept. 10, 2021), *report and recommendation adopted sub nom. Quintero v. Stoupas*, No. 19-CV-6126, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021) ("Because plaintiff has adequately pled a claim for hostile work environment . . . under . . . the NYSHRL, she has also done so under the NYCHRL.").

      ii. *Constructive Discharge*

"The standard for a constructive discharge claim under the NYCHRL is similar to the federal and NYSHRL standard." *Gonzalez v. N.Y.C. Health & Hosp. Corp.*, No. 18-CV-2645, 2019 WL 2435622, at *9 (S.D.N.Y. June 11, 2019). "'To prevail on a claim of constructive discharge' under the NYCHRL, 'the plaintiff must prove that the employer deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign.'" *Id.* (quoting *Tulino v. Ali*, 15-CV-7106, 2019 WL 1447134, at *3 (S.D.N.Y. Feb. 27, 2019)). As explained above, the plaintiff sufficiently pled constructive

13

discharge as an adverse employment action with respect to her Section 1981 claim. The complaint therefore also meets the standards under the NYSHRL and NYCHRL.

## IV.  Anti-SLAPP

The defendant also brings a motion pursuant to New York's anti-SLAPP law. (ECF No. 24.) He argues that if the Court dismisses the plaintiff's complaint, it should impose sanctions on the plaintiff for violating his first amendment rights. (*Id.* at 1.) Although the defendant's argument is not entirely clear, he appears to dispute that he "ever associated the entire Jewish Diaspora with 'Satanic' 'pedophiles;'" he says the plaintiff "concocted" this claim "solely via her amalgamation of selective knowledge and confirmation bias from continuations of intra-office discussions." (*Id.* at 1–2.) He also argues that the plaintiff violated his right to "public participation in expressing his science-based postulates . . . as a spiritual Egyptian Gnostic Hebrew." (*Id.* at 2.)[9] He seeks $22,500, which he says cover his "incurred costs of retaining legal counsel in order to answer the bad faith litigation and professional misconduct" of the plaintiff's counsel. (*Id.* at 15.)[10]

"'SLAPP' is an acronym for 'strategic lawsuits against public participation.'" *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022). New York is one of multiple states that have enacted anti-SLAPP laws, which "are intended to deter actions filed to punish or harass a defendant for participating in public life." *Id.* In 2020, the New York state legislature amended

---

[9] The defendant devotes three pages of his motion to describing the origins and principles of "Egyptian Gnostics." (ECF No. 24 at 2–4.)

[10] In his reply brief, the defendant says that in addition to the $22,500, he is owed $7,000 in "retainer costs" and $42,414.50 related to an "eviction petition" and "any additional costs needed to answer potential litigation from" other employees, and costs related to "the need to continue retaining counsel" for the corporate defendant. (ECF No. 31 at 18.) However, "it is well settled that pro se litigants are not entitled to attorneys' fees." *Alcoa, Inc. v. ATM, Inc.*, No. 04-CV-5225, 2008 WL 5115031, at *1 (E.D.N.Y. Dec. 3, 2008).

14

its anti-SLAPP laws "to broaden the applicable standards and to provide additional procedural rights to make those standards more effective." *Id.* New York's anti-SLAPP regime "is codified across two sections of the New York Civil Rights Law" — Sections 70-a and 76-a — and "two subdivisions of the New York" CPLR — CPLR 3211 and 3212. *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 564 (S.D.N.Y. 2025). Sections 70-a provides that "a defendant in an action involving public petition and participation, . . . may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action." N.Y. Civ. Rights Law § 70-a(1).[11] "A claimant's required showing under this provision depends on" whether the claimant seeks (a) "costs and attorney's fees," (b) "other compensatory damages," or (c) "punitive damages." *Heilbut*, 778 F. Supp. 3d at 565 (quoting N.Y. Civ. Rights Law § 70-a(1)). A claimant who seeks costs and attorney's fees must demonstrate, "that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." *Id.*

CPLR 3211 and 3212, the "procedural provisions of the anti-SLAPP law," "are designed to facilitate the early dismissal of 'baseless SLAPP suits' by 'flip[ping] the burden of proof ordinarily applied' under state law to motions to dismiss and motions for summary judgment." *Id.* (quoting *Reeves v. Associated Newspapers, Ltd.*, 232 A.D.3d 10 (1st Dep't 2024)). As amended, CPLR 3211(g) applies "when a defendant moves to dismiss a purported SLAPP action for failure to state a claim;" it "creates an accelerated summary dismissal procedure" where, if the movant demonstrates that the action "involve[es] public petition and participation," "the

---

[11] Section 76-a of the New York Civil Rights Law "supplies the definition of an 'action involving public petition and participation,' which the 2020 amendments 'substantially expanded.'" *Heilbut*, 778 F. Supp. 3d at 565 (quoting *Gottwald v. Sebert*, 40 N.Y.3d 240 (2023)).

15

burden then shifts to the nonmovant to demonstrate that it has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." *Id.* (citations omitted).[12]

Courts in this Circuit are divided over whether New York's anti-SLAPP laws apply in federal court. Some courts have held that New York's anti-SLAPP laws do not apply in federal court under the *Erie* doctrine, because New York's anti-SLAPP "substantial basis" standard conflicts with the pleading standard in the Federal Rules of Civil Procedure. *See e.g. Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 431 (S.D.N.Y. 2021) (finding that the "substantial basis" standard conflicts with Federal Rule of Civil Procedure 12, pursuant to which a plaintiff "need only allege enough facts to state a claim to relief that is plausible on its face" (citation omitted)); *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 366 (S.D.N.Y. 2010), *as corrected* (Aug. 19, 2010) ("New York's legislature may have adopted the Anti-SLAPP law to elevate a plaintiff's burden at the pleading stage above 'plausibility' . . . to 'substantial basis,' but the United States Congress has thus far declined to follow suit."). Other courts have distinguished the procedural and substantive elements of New York's anti-SLAPP laws and concluded that federal courts can apply the substantive elements. *See e.g., Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 183 (S.D.N.Y. 2024) (the "only procedural rule that the Court is applying is a federal rule: Rule 12(b)(6)" and "the only element of New York's anti-SLAPP law that the Court is applying is *substantive*"); *Heilbut*, 778 F. Supp. 3d at 567 (acknowledging that "New York's anti-SLAPP law contains provisions with procedural effects that appear to conflict with Rules 12 and 56" but finding that it "also provides for a substantive cause of action . . . that allows SLAPP defendants to 'bring an affirmative anti-

---

[12] "CPLR 3212(h), which the 2020 amendments left unchanged, applies a similar burden-shifting framework to motions for summary judgment." *Heilbut*, 778 F. Supp. 3d at 565.

SLAPP suit' for damages without reliance on state procedural rules" (quoting *Margolies v. Rudolph*, No. 21-CV-2447, 2022 WL 2062460, at *9 (E.D.N.Y. June 6, 2022)).

The Court does not weigh in on this question, because the defendant's motion is premised on dismissal of the complaint. As explained above, the Court denies the motion to dismiss. The defendant's anti-SLAPP motion is thus also denied.

## CONCLUSION

The defendant's motion to dismiss and anti-SLAPP motion are denied.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       August 25, 2025